UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-20804-CR-UNGARO/TORRES

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ANTHONY WILLIAMS,

    Defendant.

_____/

**REPORT AND RECOMMENDATION ON CJA VOUCHER**

On or about July 7, 2011, court-appointed defense counsel David J. Joffee ("Counsel") submitted a voucher application numbered FLS 10 3937 requesting $36,227.80 as final payment for attorney's fees and expenses pursuant to the Criminal Justice Act ("CJA"), 18 U.S.C. § 3006A.[1] Counsel also provided billing worksheets ("Worksheets") and a letter of explanation dated July 7, 2011 ("Letter") in support of his voucher application. Counsel represented Defendant Anthony Williams ("Defendant") in this case for approximately seven and a half months, from November 12, 2010 to June 27, 2011.

---

[1] The amount requested exceeds the $9,700.00 statutory maximum allowed for representation in non-capital felony cases under the CJA. As a result, the Honorable Ursula Ungaro referred the voucher application to the undersigned Magistrate Judge for a Report and Recommendation as to whether the fees requested by Counsel are appropriate. [D.E. 325].

On September 28, 2011, we held a hearing on the voucher application. Counsel was present as was Michael Gilfarb, the Assistant United States Attorney who handled the case ("AUSA"), who appeared on Counsel's behalf to explain the extended and complex nature of the case. Based on our review of the voucher application and supporting documentation, the explanations of Counsel and the AUSA, and a review of the case as a whole, we hereby recommend that Counsel be awarded a total amount of $28,907.80 as fair compensation for representing Defendant in this case.

## I.   *DISCUSSION*

### A.   *Applicable Standard Under the Criminal Justice Act*[2]

The CJA authorizes the appointment of counsel to represent indigent defendants charged with federal offenses. 18 U.S.C. § 3006A. At the conclusion of a CJA representation, the court shall compensate the appointed attorney for "time expended in court," "time reasonably expended out of court," and "expenses reasonably incurred." 18 U.S.C. § 3006A(d)(1). The district court, as the body empowered to "fix" CJA-appointed counsel's compensation, has the statutory authority and discretion to determine what is a reasonable expense or a reasonable use of billable time. *See* 18 U.S.C. § 3006A(d)(5); *United States v. Rodriguez*, 833 F.2d 1536, 1537-38 (11th Cir. 1987). Compensation is capped at $9,700.00, *see* Guidelines § 230.23.20(a), but a court may award a fee in excess of that amount by certifying that the case involved

---

[2] The Judicial Conference of the United States developed guidelines to assist courts in the application of the CJA's compensation provisions. *See In re Berger*, 498 U.S. 233, 234 (1991). The "Guidelines for Administering the CJA and Related Statutes" ("Guidelines") are contained in the Guide to Judiciary Policy, Volume 7, Part A.

"extended or complex representation" and that the excess amount is "necessary to provide fair compensation" to appointed counsel. *See* 18 U.S.C. §§ 3006A(d)(2) & (3); Guidelines §§ 230.23.40(b) & (c).

A case may be considered "complex" if the legal or factual issues in a case are unusual, thus requiring the expenditure of more time, skill and effort by the lawyer than would normally be required in an average case. *See* Guidelines § 230.23.40(b). A case may be considered "extended" if more time is reasonably required for total processing than the average case, including pre-trial and post-trial hearings. *Id*.

### B.   *Whether the Case was "Extended" or "Complex"*

In order to approve compensation in excess of the case compensation maximum, we first must find that the representation was either complex or extended. We find this case was complex for the reasons set forth below.

#### 1.   *Nature and Number of Charges*

First, the very nature and number of charges involved in this case required Counsel to expend more time, skill, and effort than normally required in an average case.

The case commenced on November 4, 2010 when the grand jury returned an eight-count Indictment against Defendant and thirteen other individuals for conspiracy to possess with the intent to distribute a controlled substance ("MDMA" or "ecstacy") in Miami-Dade and Broward Counties, possession with the intent to distribute ecstacy, possession of firearms and ammunition, and possession of a firearm in furtherance of a crime of violence.  [D.E. 1].

The government alleged that between April 2009 and February 2010, Defendant was a mid-level drug supplier in an ecstacy distribution ring that spanned two counties and involved confidential informants ("CIs"), undercover buys, audio recordings, and four wiretaps. Individually he was charged with two counts of conspiracy to possess with the intent to distribute ecstasy (Counts 6 and 7) and one count of possession of a firearm in furtherance of a crime of violence (Count 8). He faced a maximum penalty of twenty years' imprisonment on each of the conspiracy charges and a life sentence on the firearm possession charge. [D.E. 1 at 18].

Counsel was appointed to represent Defendant on November 12, 2010. [D.E. 21, 34]. At the September 28th hearing on the voucher application, both Counsel and the AUSA discussed the extended and complex nature of the case which stemmed in part from the large number of co-defendants in the case (fourteen), the large amount of discovery produced by the government, and Defendant's indecisiveness about whether or not to proceed to trial. Ultimately, Defendant opted for trial, and thus Counsel was required to review all the discovery in the case in order to properly prepare for trial.

Both lawyers informed the Court that the discovery produced by the government was voluminous. Counsel indicated in the Letter he submitted in support of the voucher application that the "voluminous discovery in this case consist[ed] of five DVD's, two CD's and a thumb drive containing 65,558 pages of documents." *See* Letter. This included transcripts of the four wiretaps, audio recordings, redacted documents relative to undercover buys with the CIs, and lab reports. The thumb drive alone held more than 65,000 pages of documents; the DVDs and CDs contained additional

discovery. As both Counsel and the AUSA explained, even though Defendant was heard on only two of the wires, Counsel had to review all four in order to properly prepare for trial. Counsel also conducted his own investigation with regard to the lab reports which, the AUSA acknowledged, "bore some fruit at trial."

Defendant was the only defendant in the case to proceed to trial. On the afternoon of the third day of trial, as his co-defendants began to testify against him, he changed his mind and pled guilty. [D.E. 209-211; D.E. 335 at 83].

### 2. *Number of Documents*

Second, this case was very document-intensive. Counsel reviewed well over 65,000 pages of discovery as well as other evidence produced in the case. He had to familiarize himself with the contents of four different wiretaps in order to properly prepare for trial. The volume of documents and other evidence that Counsel had to review to effectively represent Defendant rendered this case more complex than the average case.

### 3. *Case Proceeded to Trial*

This case was also more complex than the average case because Defendant pled not guilty and proceeded to trial. Although the trial lasted just two and a half days, Counsel had to be familiar with *all* the discovery produced as it was potential evidence against his client, particularly given that the co-defendants were expected to testify for the government.

It is clear from the record that the legal and factual issues in this case were unusual. Consequently, we conclude that this matter required the expenditure of more time, skill, and effort by Counsel than would normally be required in the average case.

### C.  *What is Fair Compensation*

Having concluded that the representation provided by Counsel was complex, we next determine what amount of fees in excess of the case compensation maximum will provide "fair compensation" to Counsel. *See* Guidelines § 230.23.40(c). We may consider criteria such as: the responsibilities involved measured by the magnitude and importance of the case; the manner in which the duties were performed; the knowledge, skill, efficiency, professionalism, and judgment required of and used by counsel; and the nature of counsel's practice and injury thereto; any extraordinary pressure of time or other factors under which the services were rendered; and any other circumstances relevant and material to a determination of a fair and reasonable fee. *Id.*

Counsel requested compensation for attorney's fees in the following amounts: (a) $2,062.50 for 16.5 in-court hours, and (b) $33,650.00 for 269.2 out-of-court hours, for a total of $35,712.50 in attorney's fees. The out-of-court hours include 16.2 hours for "Interviews and Conferences," 209.7 hours for "Obtaining and reviewing records," 4.2 hours for "Legal research and brief writing," 10.5 hours for "Travel time," and 28.6 hours for "Investigative and Other work."

In addition, Counsel sought compensation for "Travel Expenses" and "Other Expenses" in the amounts of $354.80 and $160.50, respectively.

All told, Counsel claimed reimbursement in the amount of $36,227.80 for attorney's fees and expenses incurred in this case.

1.  *Voucher Amount - Administrator's Review*

The Court's CJA administrator first reviewed Counsel's voucher for compliance with the Guidelines and mathematical accuracy prior to our review.

As noted above, Counsel sought an award of $2,062.50 for 16.5 in-court hours. The CJA administrator made no changes to the in-court hours.

The CJA administrator made one change to the 269.2 out-of-court hours claimed in the voucher: she decreased slightly the number of hours listed in the "Investigative and Other work" category, from 28.6 to 28.1 hours. This dropped the total out-of-court hours from 269.2 to 268.7.

In the "Travel Expenses" category, the CJA administrator decreased slightly the amount that Counsel claimed, from $354.80 to $334.80.

After making the minor adjustments described above, the CJA administrator concluded that the overall total amount documented by Counsel in the voucher application decreased slightly from $36,227.80 to $36,145.30.

2.  *In-Court Hours*[3]

Counsel sought reimbursement in the amount of $2,062.50 for 16.5 in-court hours. As noted, the CJA administrator made no adjustment to the number of in-court hours. We approve the amount of $2,062.50 is reasonable.

---

[3]   We defer to the Court Clerk to verify all in-court times and expense allowances.

3.  *Out-of-Court Hours*

Counsel sought reimbursement in the amount of $33,659.00 for 269.2 out-of-court hours. The CJA administrator decreased the number of hours in the "Investigative and Other work" category from 28.6 to 28.1. We approve the reduction because "Dictat[ing] and proof[ing] correspondence to FDC-Miami re: social visits for client" (on 12/21/10) did not contribute to Defendant's defense but rather were services of a personal nature and as such are not compensable under the CJA. *See* Guidelines § 230.66.20(b) ("The cost of services of a personal nature and expenses incidental thereto which cannot be considered legal representation are not compensable under the CJA.").

A further reduction in the number of hours in this category is appropriate. At the September 28th hearing, Counsel acknowledged that some of the time spent preparing for trial on 3/26/11 (6.3 hours) and 3/27/11 (7.2 hours), *see* Worksheets at 23, involved reviewing the same wire tap materials he had just reviewed on 3/25/11. We will therefore reduce the amount of time attributed to trial preparation on 3/26/11 and 3/27/11 for redundant work, from 13.5 hours to 8 hours. This reduction of 5.5 hours plus with the .5 reduction noted above reduces the total number of compensable hours in the "Investigative and Other Work" category from 28.6 to 22.6.

A reduction in the hours spent "Obtaining and reviewing records" is also warranted. Counsel's billing worksheets reflect that each time he reviewed a document in this case, he billed for it separately. For instance, on 11/15/10, three days after he

was appointed to represent Defendant, Counsel reviewed thirty-one filings in the case. *Id.* at 1-3.[4] He billed .1 hours for each. *Id.*

However, none of the 31 documents should have taken more than a few seconds to review. None was more than two pages in length, and none was unusual in a criminal proceeding in this district. Each relates to the arrest or initial appearance in court of one of the defendants in the case. Each is a form document that conveys information unique to the particular defendant, of course, but standard in every criminal proceeding: a particular individual was arrested in a criminal case; counsel appeared for or was appointed to represent that defendant; arraignment occurred; the defendant was detained, or not; and the date of the defendant's next court appearance. Yet here, for reviewing these 31 routine filings, Counsel billed a total of 3.1 hours and requests $387.50 in compensation for the work. This type of billing practice is objectionable in a CJA case, as we discuss below.

In fact, Counsel's billing worksheets reflect that throughout this case he billed .1 hour every time he reviewed an electronic filing, most of which were routine like the ones just discussed. For example, he billed .1 hour for reviewing notices of his co-defendants' invocation of their rights to silence and counsel; orders relating to co-defendants' bond status, including stipulations and orders regarding their satisfaction of the *Nebbia* requirements and modifications to their bond conditions; notices of attorney appearances; orders appointing CJA counsel for co-defendants, etc.

---

[4] These filings consisted of notices of new arrests in the case; minute entries regarding the initial appearances of defendants in the case; orders on the initial appearances of defendants in the case; and reports commencing criminal action against defendants in the case. *See* Worksheets at 1-3.

Even after Defendant pled guilty, Counsel billed .1 hour to review filings that were both routine and had nothing to do with Defendant, such as co-defendants' motions to extend the time to file objections to their pre-sentence investigation reports; filings relative to a co-defendant's re-arrest and violation of the conditions of her pretrial release; filings reflecting the preliminary proceedings for a newly-arrested co-defendant; etc.

We cannot fault Counsel for wanting to be familiar with the co-defendants' cases. But the majority of the filings required no more than a glance at the page before moving on to the next document. Each certainly did not necessitate a six-minute review. Moreover, many documents filed after Defendant pled guilty on April 1, 2011, were not even relevant to Defendant's defense and arguably do not warrant compensation.

Consequently, we find that a reduction in the number of hours spent "Obtaining and reviewing records" is appropriate. As we already recognized, Counsel had a significant amount of discovery to review in preparation for trial. But a portion of the 209.7 hours claimed in this category is based on reviewing the electronic filings cited above. Rather than attempting to sort through Counsel's numerous entries in this category,"[5] we will apply an across-the-board reduction of 25% to the number of hours

---

[5] The Eleventh Circuit has explained that "[w]here fee documentation is voluminous, such as in the instant case, an hour-by-hour review is simply impractical and a waste of judicial resources." *Loranger v. Stierheim,* 10 F.3d 776, 783 (11th Cir. 1994). Accordingly, I will not undertake an hour-by-hour review of the 209.7 hours Counsel seeks for "Obtaining and reviewing records."

for which Counsel should be reimbursed for "Obtaining and reviewing records," which brings the total in this category down to 157.3 hours.

We find that the remaining out-of-court hours listed in the voucher application were appropriate in this document-intensive, multi-defendant drug conspiracy case. Accordingly, for the reasons discussed above, we recommend that the number of out-of-court hours for which Counsel should be compensated be reduced to 210.8.

We are mindful that when considering awards to counsel under the CJA, courts have long recognized that there is an inherent tension between the policies underlying the CJA: "[o]n the one hand, representing indigent defendants is a form of public service; thus, the [CJA] was never intended to provide full compensation for an attorney's services or to provide fees equal to those charged in private practice. On the other hand, the [CJA] was also intended to provide indigent defendants with meaningful representation by competent counsel[.]" *United States v. Mukhtaar*, No. 06 Cr. 31 (SWK), 2008 WL 2151798, at * 2 (S.D. N.Y. May 21, 2008) (internal citations omitted). Congress intended the CJA to "partially alleviate the financial burden" associated with the provision of services that traditionally had been provided *pro bono*. *United States v. Diaz*, 802 F. Supp. 304, 307 (C.D.Cal.1992) (quoting *United States v. Carnevale*, 624 F. Supp. 381, 383 (D.R.I.1985)). "The spirit of the statute is lost once the CJA representation of indigent defendants loses its essentially pro bono nature." *Id.*

Applying these principles to the facts in this case, we conclude that an award of $26,350.00 for out-of-court hours is fair, though admittedly not full compensation for Counsel's services.

   4. *Expenses*

  Finally, as noted above, the CJA administrator reduced the amount for "Travel Expenses" from $354.80 to 334.80. Specifically, she reduced the amount claimed for "Parking" from $70.00 to $50.00 because Counsel failed to provide receipts. We approve this reduction.

  The CJA administrator made no alteration to the $160.50 claimed for "Other Expenses," an amount we find reasonable.

## II. CONCLUSION

  We commend Counsel for his professionalism and willingness to take this appointment. "What is commendable, however, is not necessarily compensable." *United States v. Smith*, 76 F.Supp.2d 767, 769 (S.D. Texas 1999). It is with this sentiment in mind that we recommend that some of the time incurred by Counsel in this case be considered non-reimbursable.

  As explained above, because the representation in this case was complex, we recommend that Counsel be reimbursed for an amount in excess of the $9,700.00 compensation cap. Based upon my consideration of the materials and testimony supporting the voucher application, as well as the docket and filings in this case, we RECOMMEND that Counsel David J. Joffe be paid $28,907.80 as fair and final compensation for his work in this case.

  Pursuant to Local Magistrate Rule 4(b), the parties have fourteen (14) days from the date of this Report and Recommendation in which to serve and file written objections, if any, with the Honorable Ursula Ungaro, United States District Judge. Failure to timely file objections shall bar the parties from a *de novo* determination by

the District Judge of an issue covered in the report and bar the parties from attacking on appeal the factual findings contained herein. *R.T.C. v. Hallmark Builders, Inc.,* 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir. Unit B 1982) (en banc); 28 U.S.C. § 636(b)(1).

    **DONE AND SUBMITTED** in Chambers at Miami, Florida, this 2d day of December, 2011.

                                                  /s/ *Edwin G. Torres*
                                                  EDWIN G. TORRES
                                                  United States Magistrate Judge